### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| HAIS, HAIS, AND GOLDBERGER, P.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 4:20 CV 919 DDN |
| | ) | |
| SENTINEL INSURANCE CO., LTD., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### MEMORANDUM OF LAW IN SUPPORT OF
### DEFENDANT SENTINEL INSURANCE COMPANY'S
### MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendant Sentinel Insurance Co., Ltd. ("Defendant" or "Sentinel") respectfully submits

this Memorandum of Law in Support of its Motion to Dismiss the Complaint of Plaintiff Hais,

Hais, and Goldberger, P.C. ("Plaintiff" or the "Law Firm").

### INTRODUCTION

Plaintiff, a law firm focused on family law, seeks to recover for purported losses incurred

because of "COVID-19, its effects, and the response by state and local government." *See*

Compl. ¶ 2. The Law Firm "estimates that its revenues are down at least 41% because of

COVID-19 and the ensuing stay-at-home orders." *Id.* ¶ 4.  The Law Firm seeks for its property

insurer, Sentinel, to cover its virus-related losses.

Sentinel does not dispute that stay at home orders and other measures to slow the spread

of the novel coronavirus have upended lives and resulted in broad disruption to the economy.

But the unprecedented fallout from a global pandemic does not provide a basis to override the

plain terms of an insurance contract.  Here, the Law Firm's policy includes a "'Fungi', Wet Rot,

Dry Rot, Bacteria And Virus" Exclusion ("Virus Exclusion") that states Sentinel "will not pay

for loss or damage caused directly or indirectly by . . . [p]resence, growth, proliferation, spread

or any activity of . . . virus." *See* Exhibit A at 125.  Further, "[s]uch loss or damage is excluded

regardless of any other cause or event that contributes concurrently or in any sequence to the

loss." *Id.*

The novel coronavirus (SARS-CoV-2) is a "virus" within the meaning of this exclusion,

and the business losses the Law Firm alleges were "caused directly or indirectly" by it.  Indeed,

the Law Firm admits COVID-19 is a virus (Compl. ¶¶ 22, 24-26, 28) and that its alleged losses

were "a result of the COVID-19 pandemic." (Compl. ¶ 12).

All six counts are premised on the Law Firm's policy providing coverage for its alleged

virus-related losses.  Because the Virus Exclusion bars coverage, the Law Firm's claims fail.

## FACTUAL BACKGROUND

### I.   THE POLICY

Sentinel issued a Business Owner's Policy bearing No. 84 SBA IV3917 to The Hais

Group P.C. for the policy period of August 20, 2020 through August 20, 2021 (the "Policy").  (A

copy is attached to the Complaint as Exhibit A.)  The property section of the Policy provides that

Sentinel "will pay for direct physical loss or physical damage to Covered Property . . . caused by

or resulting from a Covered Cause of Loss."  Ex. A at 28.  The Policy defines "Covered Causes

of Loss" as "risks of direct physical loss," unless the loss is excluded or otherwise limited under

the Policy.  *Id.* at 29.

The Policy also has an additional coverage for business income under certain terms.

Specifically, it provides that Sentinel:

> will pay for the actual loss of Business Income you sustain due to
> the necessary suspension of your "operations" during the "period
> of restoration".  The suspension must be caused by direct physical
> loss of or physical damage to property at the "scheduled premises"
> . . . caused by or resulting from a Covered Cause of Loss.

2

*Id.* at 37; *see* Compl. ¶ 46(a).

The Policy also covers "reasonable and necessary Extra Expense you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or physical damage to property at the 'scheduled premises'. . . caused by or resulting from a Covered Cause of Loss."  Ex. A at 37; *see* Compl. ¶ 46(c).  The Policy's Civil Authority additional coverage pays for the Law Firm's "actual loss of Business Income" sustained during a 30-day period "when access to [its] 'scheduled premises' is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of [its] 'scheduled premises.'"  Ex. A at 38; *see* Compl. ¶ 46(b).

As noted, the Policy expressly excludes losses caused by a virus.  The Virus Exclusion provides:

> [Sentinel] will ***not pay*** for loss or damage caused directly or indirectly by any of the following.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss:
>
> (1) ***Presence, growth, proliferation, spread or any activity of*** "fungi", wet rot, dry rot, bacteria or ***virus***.

Ex. A at 125 (emphasis added).  The Virus Exclusion has two exceptions that are not alleged to apply here.[1]

## II.    THE LAW FIRM'S ALLEGATIONS

The Law Firm alleges that "COVID-19 and the ensuing Stay at Home Orders forced

---

[1] The two exceptions are (1) when the virus results from fire or lightning or (2) when certain limited additional coverage is applicable.  The limited coverage "only applies" if, among other conditions, the virus results from certain specified causes of loss not at issue here (*e.g.*, windstorm, hail, volcanic action) or from an equipment breakdown.  *See* Ex. A at 126.

Plaintiff to suspend most of its operations."  Compl. ¶ 19.  The Law Firm specifically alleges

that, since St. Louis County's and the State of Missouri's stay at home orders were issued on

March 21, 2020 and April 3, 2020, respectively (Compl. ¶ 20), its attorneys were "unable to meet

with clients, take depositions, or interview prospective clients"; "[p]rospective and current

clients have been unable to visit the Law Firm's office for fear of contracting the virus"; and the

Law Firm "is restricted as to the amount of people it is allowed to have in its offices at one

time."  *Id.* ¶¶ 6-7.  As a result, "Plaintiff estimates that its revenues are down at least 41% . . . ."

*Id.* ¶ 4.[2]

The Law Firm alleges that the Policy provides coverage for "losses arising from COVID-

19" under the Business Income, Civil Authority, and Extra Expense provisions.  *Id.* ¶ 46.  The

Law Firm seeks to recover from Defendant for business income losses, civil authority, and extra

expenses incurred because of the alleged reduction in Plaintiff's legal practice.  The Complaint

asserts six causes of action.  Counts I, III and V seek "declaratory and injunctive relief" for

business interruption coverage, civil authority coverage, and extra expenses, respectively.

Counts II, IV, and VI are for breach of contract on the same three grounds, respectively.

## ARGUMENT

### I.    GOVERNING LEGAL STANDARDS

#### A.    Motion to Dismiss

To survive a 12(b)(6) motion to dismiss, a complaint must set forth "sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted).  A facially plausible

---

[2] Plaintiff also alleges that it "suspended all activity in [its] law offices when it was announced that COVID-19 posed a risk of causing further physical damage and loss" in order "to mitigate further losses, as required by the Policy."  *Id.* ¶ 45.

claim pleads facts that are not "'merely consistent with' a defendant's liability" but that "allow[]

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Id.* (quotation omitted).  Although the Court must "assume the[ ]veracity" of any "well-pleaded

factual allegations," conclusory allegations "are not entitled to the assumption of truth."  *Id.* at

679.  The requirement of facial plausibility means that the "factual content" of the plaintiff's

allegations must "allow[ ] the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged."  *Brandt v. City of La Grange, Mo.*, No. 15-cv-7, 2015 WL 1542086,

at \*2 (E.D. Mo. Apr. 7, 2015).  This inquiry is "a context-specific task that requires the reviewing

court to draw on its judicial experience and common sense."  *Id.*

The court may consider on a motion to dismiss any documents that are central to the

complaint.  *See Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th

Cir. 2018) ("We assess plausibility considering only the materials that are 'necessarily embraced

by the pleadings and exhibits attached to the complaint.'" (quoting *Whitney v. Guys, Inc.*, 700

F.3d 1118, 1128 (8th Cir. 2012))); *Wholesale Alliance, LLC v. Express Scripts, Inc.*, 366 F. Supp.

3d 1069, 1074 n.1 (E.D. Mo. 2019) ("Courts may consider exhibits attached to the complaint, as

well as materials necessarily embraced by the pleadings, on a motion to dismiss." (citing *Park

Irmat Drug. Corp.*, 911 F.3d at 512)).  Here, the Policy is central to the Complaint and was

attached to it as Exhibit A.  Therefore, the Policy may be considered on this Motion to Dismiss.

### B.        The Plain and Unambiguous Policy Terms Govern

Under Missouri law,[3] courts read insurance contracts "as a whole and determine the

---

[3] In a diversity case, the forum state's choice of law rules govern.  *Nationwide Mut. Ins. Co. v. Harris Medical Assocs., LLC*, 973 F. Supp. 2d 1045, 1051 (E.D. Mo. 2013) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)).  Under Missouri law, when construing contracts of insurance without an agreed upon choice of law, a "most significant relationship"

intent of the parties, giving effect to that intent by enforcing the contract as written." *Lafollette v. Liberty Mut. Fire Ins. Co.*, No. 14-cv-4147, 2017 WL 1026424, at *8 (W.D. Mo. Mar. 16, 2017).  The language of insurance contracts is interpreted according to its plain and ordinary meaning.  *Id.*  Unambiguous policy provisions will be enforced as written, according to their plain meaning.  *Am. States Ins. Co. v. Creative Walking, Inc.*, 16 F. Supp. 2d 1062, 1065 (E.D. Mo. 1998).

The Missouri Supreme Court has emphasized that "[d]efinitions, exclusions, conditions and endorsements are necessary provisions in insurance policies.  If they are clear and unambiguous within the context of the policy as a whole, they are enforceable." *Messina v. Shelter Ins. Co.*, 585 S.W.3d 839, 843 (Mo. Ct. App. 2019) (quoting *Todd v. Mo. United Sch. Ins. Council*, 223 S.W.3d 156, 163 (Mo. 2007)).  Courts applying Missouri law routinely conclude that "[w]here language in an insurance contract is unequivocal, it is to be given its plain meaning notwithstanding the fact that it appears in a restrictive provision of a policy." *Harrison v. MFA Mut. Ins. Co.*, 607 S.W.2d 137, 142 (Mo. 1980) (en banc) (citing *State Farm Mut. Auto. Ins. Co. v. Ward*, 340 S.W.2d 635, 639 (Mo. 1960)); *see also Eichholz v. Secura Supreme Ins. Co.*, 735 F.3d 822, 828 (8th Cir. 2013) (citing *Harrison* in finding that a business property exclusion was unambiguous and precluded coverage).

## II.     THE VIRUS EXCLUSION BARS COVERAGE FOR ALL OF PLAINTIFF'S CLAIMS

The Virus Exclusion unambiguously bars coverage for the Law Firm's claims.  The

_____

test is used in which the principal location of the insured risk is given the greatest weight, but which also takes additional factors into account. *See, e.g.*, *Nationwide Mut. Ins. Co.*, 973 F. Supp. 2d at 1051 (citing *Sturgeon v. Allied Prof'ls Ins. Co.*, 344 S.W.3d 205, 211 (Mo. Ct. App. 2011)); *Thunder Basin Coal Co., L.L.C. v. Zurich Am. Ins. Co.*, 943 F. Supp. 2d 1010, 1013 (E.D. Mo. 2013) (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 193).  The Policy at issue here was issued to Plaintiff in Missouri covering premises located in Missouri.  Sentinel assumes for purposes of this Motion that Missouri law applies.

Policy provides that Sentinel "will not pay for loss or damage caused directly or indirectly by . . . [the] presence, growth, proliferation, spread or any activity of . . . virus." Ex. A at 125.  This Exclusion applies "regardless of any other cause or event that contributes concurrently or in any sequence to the loss."  *Id.*

The Law Firm's allegations fall squarely within the exclusion.  The Law Firm alleges that the coronavirus is a virus, *see, e.g.*, Compl. ¶ 22, 24-26, 28, which, along with "the ensuing Stay at Home Orders[,] forced Plaintiff to suspend most of its operations." *Id.* ¶ 19.  The Law Firm expressly admits and that its alleged losses were "a result of the COVID-19 pandemic." *Id.* ¶ 12.  Although the Law Firm contends that the Policy does not exclude losses caused by a virus, *see id.* ¶ 42, that assertion is belied by the Policy terms, which must govern.  *See Harrison*, 607 S.W.2d at 142; *Eichholz*, 735 F.3d at 828.  The Policy expressly excludes coverage for losses "caused directly or indirectly by . . . [the] presence, growth, proliferation, spread or any activity of" the coronavirus.  Ex. A at 125.

The U.S. District Court for the Western District of Missouri excluded a similar claim based on the transmission of human immunodeficiency virus (HIV).  *See Lambi v. Am. Family Mut. Ins. Co.*, No. 11-cv-906, 2012 WL 2049915, at *4-5 (W.D. Mo. June 6, 2012), *aff'd*, 498 F. App'x 655 (8th Cir. 2013) (applying Missouri law).  There, a homeowner's policy (1) excluded from the definition of bodily injury "communicable . . . disease . . . virus, or other organism which are transmitted by any insured to any other person" and (2) separately excluded "bodily injury arising out of the actual or alleged transmission of a communicable disease." *Id.* at *2.  With respect to the definition of bodily injury, the court concluded:  "the plain language of the Policy excludes coverage for transmitting communicable diseases, such as infecting a sexual partner with HIV." *Id.* at *4.  The same was true with respect to the communicable disease

exclusion:  "Again, the plain language of the exclusion applies to deny Plaintiff coverage."  *Id.* at

*6.  The Eighth Circuit affirmed because, among other reasons, "the policy excluded bodily

injury arising out of the actual or alleged transmission of a communicable disease, and infecting

another with the HIV virus clearly falls within the plain and ordinary meaning of the

transmission of a communicable disease."  *Lambi v. Am. Mut. Ins. Co.*, 498 F. App'x 655, 656

(8th Cir. 2013) (per curiam).

Other courts in this state also regularly apply unambiguous exclusions to exclude

coverage for harm arising from mold, fungi, and other microorganisms.  *See, e.g.*, *Tate v. One*

*Beacon Ins. Co.*, 328 S.W.3d 262, 264, 266 (Mo. Ct. App. 2010) (unambiguous exclusion for

"fungi (including but not limited to any mold . . .) . . . bacteria or virus" applied to black mold);

*see also SJP Properties, Inc. v. Mount Vernon Fire Ins. Co.*, No. 14-cv-694, 2015 WL 4524337,

at *8-9 (E.D. Mo. July 27, 2015) ("Moreover, the Policies clearly exclude coverage for damages

resulting directly or indirectly from fungus."); *Mich. Millers Mut. Ins. Co. v. DG&G Co., Inc.*,

No. 06-cv-0110, 2008 WL 1766786, at *3-5 (E.D. Mo. Apr. 14, 2008) (interpreting a

"Contamination or Deterioration" exclusion for, among other things, "fungus, mildew, mold,"

and finding that the exclusion precluded coverage), *aff'd on other grounds*, 569 F.3d 807 (8th

Cir. 2009).[4]

In addition, a Michigan appellate court recently interpreted the same "'Fungus', Wet Rot,

---

[4] Courts in other jurisdictions are in accord.  *See, e.g.*, *Certain Underwriters at Lloyds of London v. Creagh*, 563 F. App'x 209, 211 (3d Cir. 2014) (policy's "microorganism exclusion" precluded coverage for the cost of remediating bacteria that escaped from a decomposed body at the insured's apartment building); *Sentinel Ins. Co., Ltd. v. Monarch Med. Spa, Inc.*, 105 F. Supp. 3d 464, 467 (E.D. Pa. 2015) (enforcing exclusion of coverage for "[i]njury or damage arising out of or related to the presence of, suspected presence of, or exposure to . . . bacteria" based on showing that Group A Streptococcus is a bacterium); *Alea London Ltd. v. Rudley*, No. 03-cv-1575, 2004 WL 1563002, at *3 (E.D. Pa. July 13, 2004) (mold exclusion bars coverage for suit alleging mold contamination).

Dry Rot And Bacteria" exclusion present in the Plaintiff's Policy and held that the plain language barred coverage for losses from wet rot.  *See Michigan Battery Equip., Inc. v. Emcasco Ins. Co.*, 892 N.W.2d 456, 460 (Mich. Ct. App. 2016).  The court reasoned that "the policy plainly identifies the risks that [the insurer] was willing to, and did contract to cover, and unfortunately for [the insured], wet rot is not one of those risks."  *Id.*

Moreover, on July 1, 2020 a Michigan court addressed coverage for COVID-19 business income claims just like those at issue here.  *Gavrilides Management Company et al. v. Michigan Insurance Company*, Case No. 20-258-CB-C30 (Mich. Circuit Court, Ingham County).  The court in *Gavrilides* concluded that Gavrilides could not demonstrate any direct physical loss to its property but, even if it had, the unambiguous virus exclusion would bar coverage.[5]

More recently, a federal district court in Texas reached the exact same conclusion with respect to COVID-19 business income claims.  *See Diesel Barbershop, LLC et al. v. State Farm Lloyds*, No. 5:20-cv-461-DAE (W.D. Tex. Aug. 13, 2020) (Dkt. No. 29) (attached hereto as Exhibit C).  The Court concluded: "Even if the Court had found that the language within the Policies was ambiguous and/or that Plaintiffs properly plead direct physical loss to the Properties, the Court finds that the Virus Exclusion bars Plaintiffs' claims."  *Id.* at 15.

The same is true here.  The meaning of the Virus Exclusion is clear:  It bars coverage because a "virus" is "not one of [the] risks" that Defendant agreed to cover, except in limited circumstances not alleged or present here.  *Michigan Battery Equip.*, 892 N.W.2d at  460.

The Virus Exclusion bars coverage regardless of whether there are additional causes of loss.  By its plain terms, the Virus Exclusion applies so long as "virus" is a cause of loss; it need not be the sole cause of loss.  The Policy provides:  "Such loss or damage is excluded ***regardless***

---

[5] The transcript and order are attached hereto as Exhibit B.

9

*of any other cause or event that contributes concurrently or in any sequence to the loss*." Ex.

A at 125 (emphasis added).  The purpose of this language, referred to as an "anti-concurrent

causation clause," is to provide certainty to the parties as to coverage when there are multiple

alleged causes of a loss.  So long as one contributing cause is excluded, the anti-concurrent

causation clause ensures the loss is not covered.  *See Messina*, 585 S.W.3d at 844 ("Courts in . . .

Missouri uniformly agree that unambiguous provisions that preclude coverage for losses caused

directly or indirectly by an excluded event 'regardless of any other cause or event that

contributes concurrently or in any sequence to the loss' are enforceable.") (quoting *Maxus Realty*

*Tr., Inc. v. RSUI Indem. Co.*, No. 06-cv-0750, 2007 WL 4468697, at *2 (W.D. Mo. Dec. 17,

2007)); *Pakmark Corp. v. Liberty Mut. Ins. Co.*, 943 S.W.2d 256, 262 (Mo. Ct. App. 1997)

(affirming summary judgment for insurer "because the policy unambiguously excluded coverage

for loss caused directly or indirectly by [one cause of defendant's loss] regardless of [another

cause that was not excluded] that contributed concurrently or in any sequence to [defendant's]

loss"); *TNT Speed & Sport Ctr., Inc. v. Am. States Ins. Co.*, 114 F.3d 731, 733 (8th Cir. 1997)

(interpreting Missouri law and affirming summary judgment for insurer where one cause of loss

was excluded under anti-concurrent causation clause).

    Without the virus, no Stay at Home Orders would have been issued to slow its spread.

The Complaint, by its own terms, makes this fact clear.  *See, e.g.*, Compl. ¶¶ 2, 4-7, 19-20, 23,

32-33, 39-40, 45, 47, 72.  This is the same conclusion the court in *Diesel Barbershop* reached

last week.  It concluded the policies "excluded coverage for the losses Plaintiffs incurred in

complying with the [governmental] Orders" addressing the spread of COVID-19.  Ex. C at 17.

The court explained that "COVID is in fact the reason for the Orders being issued and the

underlying cause of Plaintiffs' alleged losses"  and "COVID-19 . . . was the primary root cause

10

of Plaintiffs' businesses temporarily closing." *Id.*  The governmental orders "only came about

sequentially as a result of the COVID-19 virus spreading rapidly throughout the community."

*Id.*

The situation is the same here.  "COVID is in fact the reason" for the governmental

orders "being issued and the underlying cause of Plaintiff['s] alleged losses."  Accordingly, the

Virus Exclusion applies to bar coverage.

Because the Virus Exclusion applies, each of the Law Firm's claims fails and should be

dismissed.  *See Mich. Millers Mut. Ins. Co.*, 569 F.3d at 813 (affirming dismissal of declaratory

judgment action when terms of the insurance policy barred coverage); *SJP Properties, Inc.*, 2015

WL 4524337, at *9 (breach of contract claim dismissed where insurance policy did not cover

insured's losses).

## CONCLUSION

For all of the foregoing reasons and others appearing on the record, Defendant

respectfully requests that the Court grant this Motion and dismiss Plaintiff's Complaint in its

entirety and with prejudice.

Dated: August 18, 2020                                    Respectfully submitted,

By:  */s/ Patrick J. Kenny*
        Patrick J. Kenny (MO #38032)
        ARMSTRONG TEASDALE LLP
        7700 Forsyth Boulevard, Suite 1800
        St. Louis, Missouri 63105
        Tel.: (314) 621-5070
        Fax.: (314) 621-5065
        pkenny@atllp.com

        - And -

        Sarah D. Gordon (*pro hac vice* forthcoming)
        STEPTOE & JOHNSON LLP
        1330 Connecticut Avenue NW

11

Washington, DC  20036
Tel.: (202) 429-3000
Fax.: (202)429.3902
sgordon@steptoe.com

James L. Brochin (*pro hac vice* forthcoming)
Khristoph A. Becker (*pro hac vice* forthcoming)
STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, New York 10036
Tel.: (212) 506-3900
Fax: (212) 506-3950
jbrochin@steptoe.com
kbecker@steptoe.com


***Attorneys for Sentinel Insurance Company, Ltd.***

12

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 18th day of August 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which sent notification of such filing to the following:

*/s/ Patrick J. Kenny*
Patrick J. Kenny