IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| HAIS, HAIS AND GOLDBERGER, P.C., | )<br>)<br>) |
| Plaintiff, | )<br>) Case No.: 4:20 CV 919 DDN |
| v. | )<br>) |
| SENTINEL INSURANCE CO., LTD., | )<br>) |
| Defendant. | )<br>) |

**PLAINTIFF HAIS, HAIS, AND GOLDBERGER, P.C.'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

COMES NOW, Plaintiff Hais, Hais and Goldberger, P.C., by and through its attorneys, and for its Memorandum of Law in Opposition to Defendant's Motion to Dismiss, states as follows:

**Introduction**

On March 21, 2020, St. Louis County Executive Dr. Sam Page issued a stay at home order related to the novel coronavirus and its associated disease, COVID-19. *See* Plaintiff's Exhibit A. COVID-19 can cause significant respiratory issues and may require significant medical intervention such as intubation, and ultimately may cause death. The Center for Disease Control and other health organizations across the world characterize COVID-19 as a global pandemic. *See* Plaintiff's Exhibit B. The stay at home order restricted all St. Louis County residents to "essential" activities, such as grocery shopping or doctors' visits. *See* Plaintiff's Exhibit A. Plaintiff, a family law firm, with offices located at 222 S. Central Ave, Clayton, Missouri, sent home its seven attorneys and support staff, and was shut down for business due to the Stay at Home order.

1

Due to its premises being shut down, Plaintiff suffered significant financial losses due to the presence of coronavirus. Plaintiff, having purchased a business policy from Defendant, sought coverage for its losses, and Defendant denied Plaintiff's request for coverage on or about April 14, 2020. Plaintiff filed this lawsuit to secure its rights under the Policy.

This Court should deny Defendant's Motion to Dismiss because the Complaint alleges that the policy in question provides benefits for the significant financial losses caused by coronavirus and related civil authority Stay at Home orders. Plaintiff should not be punished for its foresight to purchase business interruption insurance. Plaintiff in its Complaint alleges that it had purchased a policy from Defendant ("the Policy") which provided coverage for "direct physical loss of or physical damage" to its office located in Clayton, Missouri. *See* Compl. ¶ 10. The Policy provided coverage to Plaintiff for loss of business income due to suspension of operations, expenses incurred to avoid or minimize the suspension of business, the actual loss of business income when access to the premises is prohibited by order of a civil authority, and accounts receivable its unable to collect. *See* Compl. ¶ 11. The Complaint then alleges specific facts which provide the grounds of Plaintiff's entitlement to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted) (holding that a case states a cause of action when it states sufficient fact to raise a right to relief above the speculative level). Relying on these facts, Plaintiff's state court Petition, removed on July 15, 2020, alleges two causes of action: for declaratory relief that the business interruption coverage, civil authority coverage, and extra expense coverage coverages apply to its losses and for breach of contract based on Defendant's denial of coverage. *See* Compl., generally.

Furthermore, on August 25, 2020, this case has been designated as a possible tag-along for MDL No. 2963 pursuant to Rule 6.2(d) of the Rules of Procedure for the JPML. *See*

Plaintiff's Exhibit C, Notice of Related Actions, p.2. This MDL would cover cases alleging business interruption coverage for similar Hartford policies and is currently set for hearing on September 24, 2020.

For those reasons, Plaintiff Hais, Hais & Goldberger, P.C. respectfully requests this Court deny Defendant's Motion to Dismiss.

## Standard of review

To survive a motion to dismiss, all a complaint must state is sufficient factual matter, accepted as true, to state a claim that relief is plausible on its face. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). A claim has facial plausibility when the plaintiff pleads factual content allowing the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ash v. Anderson Merchs., LLC*, 799 F.3d 957, 960 (8th Cir. 2015). All properly pleaded allegations contained within the Complaint are taken as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015).

Because this is a case in diversity jurisdiction, state law controls the construction of insurance policies. *J.E. Jones Const. Co. v. Chubb & Sons, Inc.*, 486 F.3d 337, 340 (8th Cir. 2007). Under Missouri law, the interpretation of an insurance policy is a question of law to be determined by the court. *Russo v. Frasure*, 371 F.Supp.3d 586, 590 (E.D.Mo. 2018). Under Missouri law, courts read insurance contracts as a whole and determine the intent of the parties, giving effect to that intent by reinforcing the contract as written. *Id.*

## Discussion

**I.   Plaintiff adequately alleged a direct physical loss under the Policy**

Defendant's Motion to Dismiss should be denied because the Complaint alleges that there was a direct physical loss to property based on the pandemic and related government orders.

3

Plaintiff alleged that these coverages apply: Loss of Business Income, expenses incurred to avoid or minimize the suspension of business and to continue "operations," the actual loss of business income, and amounts due from customers it was unable to collect. Plaintiff relies on the following coverages which provide in relevant part:

o. **Business Income** (1) We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or physical damage to property at the "scheduled premises"…
p. **Extra Expense** (1) We will pay reasonable and necessary Extra Expenses you incur during your "period of restoration" that you would not have incurred if there had been no direct physical loss or physical damage to property at the "scheduled premises"…
q. **Civil Authority** (1) This insurance is extended to apply to the actual loss of Business Income you sustain when access to your "scheduled premises" is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your "scheduled premises"…
r. **Extended Business Income** (1) if the necessary suspension of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business income you incur during that period…Loss of business Income must be caused by direct physical loss or physical damage at the "scheduled premises" caused by or resulting from a Covered Cause of Loss.

Plaintiff's state court Petition sufficiently sets forth the facts detailing the application of these coverages and the elements to the causes of action. As a result, Defendant's Motion to Dismiss should be denied.

A recent case from the Western District of Missouri provides guidance to the resolution of the issues in this case. On August 12, 2020, Judge Stephen R. Bough denied a defendant-insurer's motion to dismiss in favor of the insured in a factually similar case. In *Studio 417 v. Cincinnati Insurance*, a group of hair salons and restaurants operating in the Springfield and Kansas City, Missouri areas sued their insurer, Cincinnati Insurance, for coverage under five sections of their "all-risk" policies: business income coverage, civil authority coverage, ingress

4

and egress coverage, dependent property coverage, and sue and labor coverage. *Studio 417 v. The Cincinnati Insurance Company*, No. 20-cv-03127-SRB at 2-3 (W.D.Mo. Aug 12, 2020) (order denying Motion to Dismiss). Judge Bough's order is attached as Plaintiff's Exhibit C.

Judge Bough agreed with the plaintiffs and found that the presence of coronavirus on the premises constituted a direct "physical loss" under the policies. *Id.* at 8. The plaintiff's policy in *Studio 417* required that there be a "physical loss" to trigger coverage, but "physical loss" was not defined in the policy. *Id.* Therefore, Judge Bough turned to the "plain and ordinary meaning of the phrase," finding that because the plaintiffs alleged that the coronavirus was a physical substance that existed in the air, it had attached to Plaintiff's property rendering it unsafe. *Id.* It was due to this physical presence of coronavirus particles that caused the loss of use of the property. *Id.* Based on that, the Court ruled that the allegations were sufficient to deny the Motion to Dismiss. *Id.*

Similarly, the Hartford policy provisions in this case provide coverage for business interruption, civil authority, extra expense, and business income. Like the plaintiffs in *Studio 417*, Plaintiff Hais alleged that the Policy Defendant issued to Plaintiff would provide coverage if these elements are met: Plaintiff's alleged a direct physical loss caused by the presence of coronavirus on its premises or the surrounding area, which caused the local civil authority to issue an order prohibiting Plaintiff from working in its St. Louis County office. *See* Compl. ¶¶19-20. That closure in turn caused Plaintiff to lose business income it would have received had the office remained open and also caused Plaintiff to incur extra expenses transferring its work to off-site in order to keep its income at a sustainable level. *See* Compl. ¶47.

Much like the coverage at issue in *Studio 417* which contains no limits, the Policy at issue here states in coverage o. "This Additional Coverage is not subject to the Limits of

5

Insurance." *See* Defendant's Exhibit A, p. 37. Coverage p. for Extra Expense, contains that same language. *Id.*, p. 38. Like the coverage in *Studio 417*, Plaintiff's policy was an "all-risk" policy which did not contain a specific exclusion for virus or pandemics. *See* Compl. ¶¶38-39.

Plaintiff's Complaint cites specifically to these sections and asserts sufficient grounds entitling them to relief under the Policy. Plaintiff first asserts that it purchased loss of business income coverage. *See* Compl. ¶ 46. This coverage covers "the actual loss of Business Income [Plaintiff] sustain[s] due to direct physical loss or physical damage at the premises." *See* Defendant's Exhibit A, p. 38. Plaintiff alleged that this business income loss was caused by the physical presence of coronavirus in St. Louis County. *See* Compl. ¶33. Because there is a physical presence of coronavirus which caused business interruption, that is a direct physical loss and the business interruption coverage Plaintiff purchased from Defendant was triggered.

Plaintiff is also covered by the section titled "civil authority" which extended Plaintiff's coverage to "actual loss of business income" sustained "when access to [its] 'scheduled premises'" is prohibited by order of a civil authority. *See* Defendant's Exhibit A, p. 38. Plaintiff alleged the very elements of this policy in its complaint. *See* Compl. ¶¶ 31-33.  Dr. Sam Page's order prohibited Plaintiff from using its office, triggering this coverage. *See* Exhibit A.

Finally, Plaintiff adequately plead that physical loss due to coronavirus created extra expenses for which the Policy provides coverage. Plaintiff's policy provides coverage for "reasonable and extra expense" occurred during the "period of restoration." *See* Defendant's Exhibit A, p. 37. "Period of restoration" is defined as the period of time that begins with direct physical loss to the premises and ends when the premises is useable again or when business is resumed at a new location. *Id.* at 51. As noted above, Plaintiff experienced a physical loss which interrupted its business, and Plaintiff pleaded that suffered extra expenses. *See* Compl. ¶ 86.

Because Plaintiff properly pleaded all elements of its claims of coverage, this court should deny Defendant's Motion to Dismiss.

## II. The "limited fungi, bacteria, or virus coverage" cited by Defendant is ambiguous as to what it covers

Defendant's Motion to Dismiss should be denied because the endorsement exclusion relied upon by Defendant Sentinel does not preclude coverage in that (1) the endorsement is limited to Computer and Media Coverage, and (2) in the alternative, the application of this endorsement to the coverage provided in Coverages o, p, q and r, would be ambiguous because the reasonable expectations of the insured would not expect that this endorsement applies to coverages o, p, q, and r, in that there is no reference to these coverages in the policy provisions. Therefore, as the latter, the application of this endorsement would be ambiguous.

With respect to the endorsement, it is titled, "Limited Fungi, Bacteria or Virus Coverage." *See* Defendant's Exhibit A, p. 125. Here, plaintiff has made assertions under coverages o, p, and q, which are the business income, extra expense, civil authority, and extended business income coverage. *See* Compl. ¶ 46. Whether this endorsement applies to these conditions precedent is another question, but as to the allegations in this case, the endorsement does not preclude coverage. When Plaintiff purchased this extra "Limited Fungi, Bacteria or Virus Coverage" it did not expect it to be used as a sword to eliminate entire swaths of benefits it had obtained. *See* Defendant's Exhibit A, p. 15.

With respect to the ambiguity, a reasonable reading of this endorsement would include that it applied to the Computer and Media coverage. In contrast, Defendant, in its Motion, has expanded the breadth of this endorsement to argue that it applies to all potential coverages provided in the policy, i.e., plaintiff's case should be dismissed because the limited virus coverage endorsement excludes coverage for losses that occur as a result of a global pandemic

7

that resulted in government mandated work from home orders to protect public health. Even if the endorsement would apply to the business interruption coverage as a general exclusion, the titling of the endorsement as, "Computer and Media Coverage", and failing to reference its application to other coverages under the policy render its terms ambiguous at best.

The central issue is determining whether any ambiguity exists, which occurs where there is duplicity, indistinctness, or uncertainty in the meaning of the words used in the contract. *Seeck v. Geico General Ins. Co.*, 212 S.W.3d 129, 132 (Mo. Banc 2007). If policy language is unambiguous, it must be enforced as written. *Id.* But if the language is ambiguous, courts construe the policy in favor of the insured. *Id.* "Policy terms are given the meaning which would be attached by an ordinary person of average understanding if purchasing insurance." *Vogt v. State Farm Life Ins. Co.,* 963 F.3d 753, 763 (8th Cir. 2020) (applying Missouri law) (quotations omitted).

The limited virus coverage is ambiguous because it is titled to cover "computers and media coverage." *See* Defendant's Exhibit A, p. 125. Nowhere in the limited virus coverage does it reference any of the coverages Plaintiff claims covers its losses. The policy notes that it adds coverage to the "special property coverage form," but makes no reference to the specific coverages therein. Further, the business interruption coverage, civil authority coverage, and extra expense coverage that Plaintiff claims it was covered by was not mentioned at all in the limited virus coverage and *vice versa*. For example, Plaintiff's business income coverage note specifically that it was "not subject to the Limits of Insurance." *See* Defendant's Exhibit A, p. 37. The Extra Expense coverage contains the exact same language that it also was "not subject to the Limits of Insurance." *Id.* at 38. An ordinary insured such as Plaintiff interpreted this to mean that

8

the limited virus coverage would not bar coverage under this section because the limited virus coverage covers computers and media only.

But the limited virus coverage is ambiguous because an ordinary person of average understanding could mistake it for covering solely computers and media. Therefore, the coverage is ambiguous and must be construed in favor of the Plaintiff.

Defendant attempts to compare Plaintiff's case to several cases, but all are distinguishable because they contain specific *exclusions* for virus or wet rot as opposed to what Plaintiff's policy contains, which is ambiguous limited coverage for damage from a virus. Defendant first compares Plaintiff's case to one regarding the transmission of HIV. [Doc #17 at p. 7]. However, the policy in that case, *Lambi v. Am. Family Mut. Ins. Co.*, contained a specific exclusion for "communicable…disease" that is not in Plaintiff's policy here. *Lambi v. Am Family Mut. Ins. Co.*, No. 11-cv-906, 2012 WL 2049915, at *2 (W.D. Mo. June 6, 2012). The Court in *Lambi* relied exclusively on that specific exclusion for communicable disease in dismissing the plaintiff's Complaint seeking coverage. *Id.* at *5. Again, as noted above, Defendant is relying on an ambiguous limited virus coverage and not an unambiguous exclusion for damage caused by virus.

Defendant also relies on a case where the policy contained an explicit exclusion for "Fungus, Wet Rot, Dry Rot, and Bacteria" in a case where a plaintiff sought coverage for losses from wet rot. *Michigan Battery Equip., Inc. v. Emcasco Ins. Co.*, 892 N.W.2d 456, 460 (Mich. Ct. App. 2016). Again, that case is distinguishable because it contains a specific wet rot exclusion not limited wet rot coverage like Plaintiff Hais' policy has with virus coverage.

Defendant cites to a COVID-19 coverage case that contains the same distinguishing deficiency that the previously mentioned cases contain: a specific virus exclusion that is not

present in Plaintiff Hais' Policy. In *Diesel Barbershop*, the policy would cover for accidental direct physical loss to the property unless covered by a specific exclusion. *Diesel Barbershop, LLC et al. v. State Farm Lloyds*, No. 5:20-cv-461-DAE *5 (W.D. Tex. Aug. 13, 2020), 5. The policy contained an exclusion for "Fungi, Virus or Bacteria," which is not present in the Plaintiff's Policy. *Id.* at *6. The Western District of Texas court relied on the virus exclusion, holding that the Virus Exclusion barred the plaintiff's claim. *Id.* at 15. Plaintiff's policy again includes limited virus *coverage*, not a specific virus exclusion. Further, as noted above, the limited virus coverage in Plaintiff's Policy is ambiguous as to the limits of what it covers. *Diesel Barbershop* is distinguishable and should not be followed by this Court.

Because the limited virus coverage is ambiguous as to what else in the policy it modifies, Defendant's Motion to Dismiss should be denied.

## Conclusion

This Court should deny Defendant's Motion to Dismiss because it does not cite an exclusion applicable to this case, and therefore Plaintiff has alleged sufficient facts to survive a motion to dismiss.

                                                                      Respectfully submitted,

By:   */s/ Alan S. Mandel*
         Alan S. Mandel, #MO29137
         1010 Market Street, Suite 850
         St. Louis, Missouri 63101
         PH: (314) 621-1701
         FX: (314) 621-4800
         alan@mandelmandel.com

**CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that the foregoing document was filed electronically with the Clerk of the Court to be served by the operation of the Court's electronic filing system upon:

Patrick Kenny
Armstrong Teasdale LLP
7700 Forsyth Boulevard, Suite 1800
St. Louis, Missouri 63105
Tel.: (314) 621-5070
Fax: (314) 621-5065
pkenny@atllp.com

Sarah D. Gordon
Steptoe & Johnson LLP
1330 Connecticut Avenue NW
Washington, DC 20036
Tel.: (202) 429-3000
Fax: (202) 429-3902
sgordon@steptoe.com

James L. Brochin
Kristoph A. Becher
Steptoe & Johnson LLP
1114 Avenue of the Americas
New York, New York 10036
Tel.: (212) 506-3900
Fax: (212) 506-3905
jbrochin@steptoe.com
kbecher@steptoe.com