UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| HAIS, HAIS, and GOLDBERGER, P.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4: 20 CV 919 DDN |
| | ) | |
| SENTINEL INSURANCE COMPANY, LTD., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

This action is before the Court on the motion of defendant Sentinel Insurance Company, Ltd., to dismiss the complaint of plaintiff Hais, Hais, and Goldberger, P.C., under Federal Rule of Civil Procedure 12(b)(6). A hearing was held, post-hearing materials have been received, and the matter is ripe for decision.[1]

## BACKGROUND

Plaintiff commenced this action in the Circuit Court of St. Louis County, Missouri. Defendant removed the action to this Court under 28 U.S.C. § 1441(a), invoking the Court's original subject matter jurisdiction granted by 28 U.S.C. § 1332, based upon the diversity of the parties' citizenship and the amount in controversy.

Plaintiff alleges the following facts in its complaint. Plaintiff is and has been a law firm practicing family law in the St. Louis, Missouri, metropolitan area for over 30 years. Plaintiff purchased a commercial property insurance policy ("Policy") from defendant to protect itself from property loss and business interruption. "COVID-19, its effects, and the response by state and local government has caused physical damage and loss to Plaintiff's property and has caused an interruption in Plaintiff's business." (Doc. 4 at 1-2.) Plaintiff specifically alleges that its revenues are down due to the coronavirus pandemic and related governmental actions such as stay-at-home orders.

---

[1] All parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).

Plaintiff alleges it prepared for such events as the coronavirus pandemic by purchasing the Policy from defendant; it alleges it attached a copy of the policy to its state court petition as Attachment A. (*Id.* at ¶ 9.) The complaint describes the policy as an "all-risk" policy that "insures against all risks of physical loss or damage to the property except by the expressly listed exclusions. The Policy does not exclude or limit coverage for losses from COVID-19 or pandemics." (*Id. at* ¶¶ 38, 39*.)*

Plaintiff alleges the Policy's provisions include coverage on page 10 for actual loss of business income sustained due to direct physical loss or damage; on page 10 for the "extra expense" of minimizing the suspension of business and of continuing business operations; and on page 11 for interruption of business caused by an order from a "Civil Authority." (*Id.* at 9-10.) More specifically, plaintiff alleges the Policy covers:

> a. Loss of Business Income sustained due to the necessary suspension of "operations" during the "period of restoration."
>
> b. Expenses incurred to avoid or minimize the suspension of business and to continue "operations", at replacement premises or at temporary locations, including relocation expenses.
>
> c. The actual loss of Business Income sustained when access to the "scheduled premises" is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of the "scheduled premises".
>
> d. All amounts due from customers that it is unable to collect, interest charges on any loan required to offset amounts it is unable to collect pending Defendant's payment of these amounts; and other reasonable expenses that it incurs to reestablish its records of accounts receivable.

(*Id.* at 3.) All of these alleged coverages arise from the Policy's "SPECIAL PROPERTY COVERAGE FORM."

Plaintiff alleges that on April 14, 2020, defendant denied plaintiff's notice of claim and refused to cover plaintiff's losses due to the pandemic.

Plaintiff seeks declaratory and monetary relief for defendant's breach of the policy contract in six counts under Missouri law: Counts 1 and 2 for business interruption; Counts 3 and 4 for damages caused by actions of civil authority; and Counts 5 and 6 for the recovery of its extra business expenses.

## MOTION TO DISMISS

Defendant admits it issued the Policy to plaintiff and that it covers the period August 20, 2020 through August 20, 2021. However, defendant moves to dismiss the complaint because the Policy unambiguously excludes coverage for plaintiff's claims caused by the novel coronavirus pandemic that causes COVID-19.

## Applicable legal standards

Under Rule 12(b)(6) a party may move to dismiss all or part of a complaint for its failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. Pro. 12(b)(6). To overcome a Rule 12(b)(6) motion a complaint "must include enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), containing "more than labels and conclusions." *Id.* at 555. Such a complaint will "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and will state a claim for relief that rises above mere speculation. *Twombly*, 550 U.S. at 555.

In reviewing the pleadings under this standard, the Court must accept all of the plaintiff's factual allegations as true and draw all inferences in plaintiff's favor, but the Court is not required to accept the legal conclusions plaintiff draws from the facts alleged. *Retro Television Network, Inc. v. Luken Commc'ns, LLC,* 696 F.3d 766, 768-69 (8th Cir. 2012). The Court additionally "is not required to divine the litigant's intent and create claims that are not clearly raised [and] it need not conjure up unpled allegations to save a complaint." *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009) (en banc).

In a diversity case, the forum state's choice of law rules govern. *See Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496 (1941); *see also* 28 U.S.C. § 1652. Under Missouri law, when construing contracts without a choice of law provision, the most significant relationship test is used. *E.g., Sturgeon v. Allied Professionals Ins. Co.*, 344 S.W.3d 205, 211 (Mo. Ct. App. 2011). In actions involving insurance policies, the principal location of the insured risk is given paramount weight in the significant relationship test. *Id.* Defendant's policy was issued to cover plaintiff's business premises that are located in Missouri. The Court concludes that Missouri law provides

the rules of decision in this matter and both parties apply Missouri substantive law in their arguments.

In this pleading dispute, it is plaintiff's burden to identify the policy provisions that cover the policy benefits it seeks. *Am. Fam. Mut. Ins. v. Coke*, 413 S.W.3d 362, 368 (Mo. Ct. App. 2013). Conversely, defendant must identify the policy provision that excludes the coverage plaintiff claims. *Burns v. Smith*, 303 S.W.3d 505, 510 (Mo. banc 2010); *Am. Fam. Mut. Inc. Co. v. Coke*, 413 S.W.3d at 368.

Once the relevant provisions of the policy are identified, the following principles of Missouri substantive law are to be applied:

> The interpretation of an insurance policy is an issue of law . . . . In construing the terms of an insurance policy, the [Missouri Supreme] Court applies the meaning which would be attached by an ordinary person of average understanding if purchasing insurance. The general rule in interpreting insurance contracts is to give the language of the policy its plain meaning. If language in an insurance policy is ambiguous, [the ambiguity is resolved] against the insurer-drafter. An ambiguity exists only when a phrase is reasonably open to different constructions.

*Allen v. Continental Western Ins. Co.*, 436 S.W.3d 548, 553-54 (Mo. banc 2014) (citing *Mendenhall v. Property and Casualty Ins. Co. of Hartford*, 375 S.W.3d 90, 92 (Mo. banc 2012)); *Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132, 135 (Mo. banc 2009); *Gavan v. Bituminous Cas. Corp.*, 242 S.W.3d 718, 720 (Mo. banc 2008); and *Krombach v. Mayflower Ins. Co.*, 827 S.W.2d 208, 211 (Mo. banc 1992)) (internal quotation marks omitted) (cleaned up).

### Policy provisions invoked by plaintiff

Plaintiff's complaint invokes the following Policy provisions:

**SPECIAL PROPERTY COVERAGE FORM**
Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties, and what is and is not covered.
\* \* \*
**A. COVERAGE**
We will pay for direct physical loss of or physical damage to Covered Property at the premises described in the Declarations (also called "scheduled premises" in this policy) caused by or resulting from a Covered Cause of Loss.

    1. **Covered Property**
Covered property as used in this policy, means the following types of property for which a Limit of Insurance is shown in the Declarations:
\* \* \*

4

3. **Covered Causes of Loss**
RISKS OF DIRECT PHYSICAL LOSS unless the loss is:
   a. Excluded in Section **B., EXCLUSIONS;** or
   b. Limited in Paragraph A.4. Limitations; that follow.

4. **Limitations**
* * *
5. **Additional Coverages**
* * *
   o. **Business Income**
   (1) We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or physical damage to property at the "scheduled premises", . . . .

   p. **Extra Expense**
   (1) We will pay reasonable and necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or physical damage to property at the "scheduled premises" . . . .
* * *
   (3) Extra Expense means expense incurred:
      (a) To avoid or minimize . . . .
      (b) To minimize the suspension of business if you cannot continue "operations".
      (c) (1) To repair or replace any property; or
* * *
   q. **Civil Authority**
   (1) This insurance is extended to apply to the actual loss of Business Income you sustain when access to your "scheduled premises" is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your "scheduled premises".
* * *
   r. **Extended Business Income**
   (1) If the necessary suspension of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that: . . . .
* * *
   Loss of business Income must be caused by direct physical loss or physical damage at the "scheduled premises" caused by or resulting from a Covered Cause of Loss.

* * *
B. **EXCLUSIONS**

5

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence of the loss.

    **a.**     **Earth Movement**

* * *

    **b.**     **Government Action**
Seizure or destruction of property by order of governmental authority.

* * *

(Docs. 17-1 and 18 at 4.)

<b><u>Policy provision invoked by defendant</u></b>

Defendant invokes the following policy provisions to exclude plaintiff's claims:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**
**LIMITED FUNGI, BACTERIA OR VIRUS COVERAGE**

This endorsement modifies insurance provided under the following:

**SPECIAL PROPERTY COVERAGE FORM**
**STANDARD PROPERTY COVERAGE FORM**
**PERSONAL PROPERTY OF OTHERS**
**COMPUTERS AND MEDIA COVERAGE**

**A.**     **Fungi, Bacteria or Virus Exclusions**

    **1.**     Paragraph **A.5.i.(5).** . . . of the Standard Property Coverage Form is replaced by the following:

* * *

    **2.**     The following exclusion is added to Paragraph **B.1.** Exclusions of the Standard Property Coverage Form and the Special Property Coverage Form; Paragraph **F.**, Additional Exclusions of Computers and Media, form SS 04 45, Personal Property of Others:

* * *

    i.     **"Fungi", Wet Rot, Dry Rot, Bacteria and Virus**
We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss:

    (1)     Presence, growth, proliferation, spread or any activity of "fungi", wet rot, dry rot, bacteria or virus.

    (2)     But if "fungi", wet rot, dry rot, bacteria or virus results in a "specified cause of loss" to Covered Property, we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:

6

> **(1)** When "fungi", wet or dry rot, bacteria or virus results from fire or lightning; or
> **(2)** To the extent that coverage is provided in the Additional Coverage – Limited Coverage for "Fungi", Wet Rot, Dry Rot, Bacteria and Virus with respect to loss or damage by a cause of loss other than fire or lightning.
> This exclusion applies whether or not the loss event results in widespread damage or affects a substantial area.

(Doc. 17-1 at 125-26.)

## DISCUSSION

Defendant's motion to dismiss does not argue that plaintiff's complaint does not sufficiently allege the essential elements of the breach of contract claims based on policy coverages set out at subsections A.5. o through r, above.[2] Defendant admits it issued the Policy for the term August 20, 2020 through August 20, 2021. It admits the policy provides coverage for direct loss or physical damage to covered property, additional coverage for business income loss, and extra expense during a period of restoration caused by a covered cause of loss, unless the loss is excluded.

Defendant argues only that plaintiff's complaint should be dismissed because the policy contains a virus exclusion in Endorsement section A.2.i.(1), quoted above, which unambiguously bars all benefits claimed by plaintiff in its judicial complaint.

Plaintiff admits the Policy contains the language relied on by defendant but argues it does not preclude coverage because (1) the endorsement language is limited to computer and media coverage; and (2) the application of the endorsement language to coverage subsections A.5. o, p, q, and r would render the endorsement language ambiguous because there is no reference in the endorsement to these coverage sections.

### Reasonable expectation doctrine

Preliminarily, plaintiff also argues that when it purchased this policy (with the "Limited Fungi, Bacteria or Virus Coverage") its reasonable expectation did not include the endorsement language applying to coverage subsections A.5. o, p, q, and r. (Doc. 18 at 7.) Generally stated,

---

[2] Plaintiff argues that this case is sufficiently similar to *Studio 417*, Inc. v. Cincinnati Ins. Co., 478 F. Supp.3d 794 (W. D. Mo. 2020), to warrant denial of the motion to dismiss. However, the District Court in *Studio 417, Inc.* did not discuss at all the defendant's argument regarding a virus exclusion in the policy. Rather, such was deferred to the summary judgment stage of the case. 478 F. Supp.3d at 805.

7

"[t]he 'reasonable expectations doctrine' provides that the expectations of adherents and beneficiaries to insurance contracts will be honored if their expectations of coverage are reasonable in light of the wording of the policy, even if a more thorough study of the policy provisions would have negated these expectations." *Kellar v. Am. Fam. Mut. Ins. Co.*, 987 S.W.2d 452, 455 (Mo. Ct. App. 1999) (citing *Robin v. Blue Cross Hosp. Serv., Inc.*, 637 S.W.2d 695, 697 (Mo. banc. 1982). Stated another way, under Missouri law an ambiguous policy provision is to be construed against the insurer "consistent with [the insured's] *objective and reasonable* expectations as to what coverage would be provided." *Burns v. Smith*, 303 S.W.3d 505, 512 (Mo. banc 2010) (quoting *Niswonger v. Farm Bureau Town & Country Ins. Co. of Mo.*, 992 S.W.2d 308, 317 (Mo. Ct. App. 1999)) (emphasis added by Supreme Court); *see also Lightner v. Farmers Ins. Co., Inc.* 789 S.W.2d 487, 490 (Mo. banc. 1990). Clearly now, under Missouri law, the reasonable expectation doctrine applies only to an insurance policy that is a contract of adhesion that involves an ambiguous provision. *Rodriguez v. General Accident Ins. Co.*, 808 S.W.2d 379, 381-82 (Mo. banc 1991). "[I]nsurance contracts are considered contracts of adhesion when they contain boiler-plate language prepared by the insurer and sold to the insured on a take-it-or-leave-it basis, without negotiation, and if the policy unconscionably limits the obligations and liability of the drafting party." *Kellar v. Am. Fam. Mut. Ins. Co.*, 987 S.W.2d at 455.

Regarding its expectation when it purchased the policy in this case, plaintiff alleges in the complaint at one place generally that it purchased the policy from defendant "to protect [it] in the event of property loss and business interruption." (Doc. 4 at 1.) This allegation of its intention when it purchased the policy is general in its scope. The complaint continues by alleging immediately thereafter, "COVID-19, its effects, and the response by state and local government has caused physical damage and loss to Plaintiff's property and has caused an interruption in Plaintiff's business." (*Id.* at 1-2.)

Later in the complaint, plaintiff, describes the course of the current pandemic from the beginning of its known effects, including the emergency declaration and stay-at-home order in March 2020 by St. Louis County government and its effect on plaintiff's business operation. (*Id.* at 2.) Plaintiff alleges it "prepared for events such as the outbreak of COVID-19 by purchasing property insurance from Defendant, that included pandemic coverage" (*id.* at 3), and "[i]n order to protect itself against risks like COVID-19, Plaintiff purchased the Policy from Defendant" (*id.* at 7).

The complaint does not allege plaintiff purchased the policy to protect it specifically from the effects of a virus. Rather, plaintiff alleges the policy is an "all-risk" policy that covers "all risks of physical loss or damages to the property except by the expressly listed exclusions." (*Id.* at 8.)

The Policy was a renewal policy covering the term August 20, 2020 to August 20, 2021. Nothing in the plaintiff's complaint indicates that the policy was specifically negotiated regarding any virus coverage. The Court concludes from a plain reading of plaintiff's complaint that the Policy qualifies as a contract of adhesion.

<u>Contract ambiguity</u>

Plaintiff argues that the anti-virus Endorsement section A.2.i.(1) is ambiguous as to what it covers, in that its coverage is limited to Computer and Media Coverage and does not include Coverages o, p, q, and r.

The Court concludes from a plain reading of the Virus Endorsement in the Policy as a whole that the Endorsement is unambiguous. The introductory caption of the Endorsement indicates that it applies to all four areas of coverage, including plaintiff's "SPECIAL PROPERTY COVERAGE FORM" and the COMPUTERS AND MEDIA COVERAGE."

Next, while the Virus Exclusion itself does not refer to the A.5. o through r coverages, it clearly applies to the SPECIAL PROPERTY COVERAGE FORM and all coverages provided by that "form."

Plaintiff argues that the limited virus coverage is ambiguous because it is titled under "computers and media coverage," further arguing that defendant's case citations are distinguishable from this case because the cited cases contain specific *exclusions* for viruses, as opposed to the ambiguous *limited coverage* for damages from a virus as found in this case. (*See* Doc. 17, Ex. A at 125.) Further, plaintiff argues that the business income coverage and extra expenses coverage contain the language "not subject to the Limits of Insurance," which an ordinary insured would interpret to mean that the 'limited virus coverage' would not bar coverage. (*Id*. at 37-38.) Finally, plaintiff argues that the business interruption coverage, civil authority coverage, and extra expenses coverage that plaintiff claims it is covered for was not mentioned under the limited virus coverage section.

The Court disagrees. Plaintiff identifies the applicable section of the Policy but argues to limit the virus exclusion to "computers and media coverage." However, at the top of the page in

9

all capital bold letters is the following language: "**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**" (*Id.* at 125.) Focused on the word *limited*, plaintiff notes the title then follows in bold capital letters "**LIMITED FUNGI, BACTERIA OR VIRUS COVERAGE.**" (*Id.*) Next the document reads, "This endorsement modifies insurance provided under the following:" and expressly provides that it applies to four forms that are stated in bold capitalized font:

> **SPECIAL PROPERTY COVERAGE FORM**
> **STANDARD PROPERTY COVERAGE FORM**
> **PERSONAL PROPERTY OF OTHERS**
> **COMPUTERS AND MEDIA COVERAGE**

(*Id.*) The plain language of this text establishes that it is not limited to "computer and media coverage," as plaintiff argues. In fact, regardless of whether the endorsement is an "exclusion" or a "limit", its language is expressly applicable to all four forms:

> 2. *The following exclusion is added to Paragraph B.1.* Exclusions of the Standard Property Coverage Form and the Special Property Coverage Form; Paragraph F., Additional Exclusions of Computers and Media, form SS 04 41, and to form SS 04 45, Personal Property of Others:
>> **i. "Fungi", Wet Rot, Dry Rot, Bacteria And Virus**
>> We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss:
>>> **(1)** Presence, growth, proliferation, spread or any activity of "fungi", wet rot, dry rot, bacteria or virus.
>>> **(2)** But if "fungi", wet rot, dry rot, bacteria or virus results in a "specified cause of loss" to Covered Property, we will pay for the loss or damage caused by that "specified cause of loss".
>>
>> This exclusion does not apply:
>>> **(1)** When "fungi", wet or dry rot, bacteria or virus results from fire or lightning; or
>>> **(2)** To the extent that coverage is provided in the Additional Coverage – Limited Coverage for "Fungi", Wet Rot, Dry Rot, Bacteria and Virus with respect to loss or damage by a cause of loss other than fire or lightning.
>
> This exclusion applies whether or not the loss event results in widespread damage or affects a substantial area.

(*Id*. at 125) (bolded italics added). This provision expressly addresses Paragraph B.1 'Exclusions" of the Special Property Coverage Form located on the Policy, page 45:

> **B. EXCLUSIONS**
> **1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

(*Id*. at 43.)

In support of its argument, defendant offers many related business interruption cases decided throughout the United States. For example, in *Mauricio Martinez, DMD, P.A., v. Allied Insurance Company of America,* the insurance carrier moved to dismiss the dentist's action seeking recovery from loss from business interruption due to stay at home orders resulting from COVID-19. No. 2:20cv401, 2020 WL 5240218 (M.D. Fla. Sept. 2, 2020). Like here, that policy expressly excluded insurer liability for loss or damage caused "directly or indirectly" by any virus. The court held that the plain language of the policy barred the breach of contract and related injunctive relief claims. *Id*. at *2.

In *Michigan Battery Equipment, Inc., v. Emasco Insurance Company*, the language in the limited coverage section is virtually identical to this case, in that it excluded most claims caused by fungus, wet rot, or bacteria but provided limited coverage in a few specific scenarios. 892 N.W.2d 456, 459 (Mich. Ct. App. 2016). In that case, the Michigan Court of Appeals held that the wet rot and resulting damage was not covered under the policy because it was excluded under the general exclusion in Section B.1. and none of the exceptions applied.

In the instant case, the plain language of the Policy reads "exclusion" and refers to Section B of the Special Property Coverage Form which is also expressly titled "exclusions." The plain language of the Policy excludes virus caused claims except in very "limited" circumstances which are not alleged here.

Lastly, to the extent plaintiff argues that business interruption coverage, civil authority coverage, and extra expenses coverage that plaintiff claims relief under was not mentioned in the limited virus coverage, the Court disagrees. The Policy virus exclusion language expressly applies to the Special Property Coverage Form wherein the Business Income, Extra Expense, Civil

Authority, and Extended Business Income provisions appear. Therefore, the virus exclusion precludes the coverage plaintiff seeks.

## CONCLUSION

For the reasons set forth above, the motion of defendant Sentinel Insurance Company, Ltd. to dismiss the action is sustained and the action is dismissed with prejudice. An appropriate Judgment Order is issued herewith.

        /s/ **David D. Noce**
**UNITED STATES MAGISTRATE JUDGE**

Signed on June 21, 2021.